# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DUJUAN LAMONT ADAMS, | ) | CASE NO. 4:09-CV-00137 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| BENNIE KELLY, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, DuJuan Lamont Adams ("Adams"), challenges the constitutionality of his sentence in the case of *State v. Adams*, Mahoning County Court of Common Pleas Case No. 00-CR-102.  Adams, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on January 21, 2009.  On July 17, 2009, Warden Bennie Kelly ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 6.)  Adams filed a Traverse on August 12, 2009. (Doc. No. 7.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Adams's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Adams's conviction and sentence as follows:

> [*P2]  On August 28, 2000, Adams was sentenced by the Mahoning County Court
> of Common Pleas for two counts of attempted murder and two firearm
> specifications.  His convictions stemmed from a drug deal that occurred on the
> evening of January 8, 2000.  According to the victims, Adams was trying to buy
> marijuana, but was short forty dollars.  With the drugs in his possession, he had
> his dealer, Kendall Lovejoy, and an acquaintance, Greg Brown, drive him to his
> grandmother's house.  Once they arrived, Adams shot Brown in the eye. Lovejoy
> tried to wrestle the gun from Adams and flee, but Adams shot him in the hand and
> foot.
>
> [*P3]  Adams appealed that decision to this court.  We originally dismissed that
> appeal for failure to prosecute, but later granted Appellant's delayed application to
> reopen his appeal.  In a decision styled, *State v. Adams*, 7th Dist. No. 00 CA 211,
> 2006 Ohio 1761, at P 67, we affirmed Adams's convictions, but concluded that
> "the trial court erred in imposing two gun specification prison terms." We then
> vacated Adams's sentence and remanded the case for a new sentencing hearing
> pursuant to *Foster*.  *Id*. at P 75.  Adams appealed this decision to the Ohio
> Supreme Court, but that court declined jurisdiction on August 2, 2006.
>
> [*P4]  The trial court resentenced Adams on October 20, 2006.  At that
> sentencing hearing, the trial court sentenced Adams to the maximum of ten years
> imprisonment on each count of attempted murder and one three-year firearm
> specification.  It ordered that each of these terms of imprisonment be served
> consecutively, for a total of twenty-three years in prison.

*State v. Adams*, 2007 Ohio App. LEXIS 4711, 2007-Ohio-5352 at ¶¶2-4 (Ohio Ct. App. Sept. 21,

2007).

## II.  Procedural History

### A.    Conviction

On February 24, 2000, the Mahoning County Grand Jury charged Adams with two counts

of attempted murder in violation of Ohio Revised Code ("O.R.C.") §§ 2923.02(A)&(B) together

with firearm specifications.  (Doc. No. 6, Exh. 1.)  On August 23, 2000, a jury found Adams

guilty as charged.  (Doc. No. 6, Exh. 3.)  On August 28, 2000, the trial court sentenced Adams to

a term of ten (10) years incarceration for each attempted murder conviction and three years for

-2-

each firearm specification.  (Doc. No. 6, Exh. 4.)  The sentences were to be served consecutively, for an aggregate term of twenty-six (26) years.  *Id.*

**B.    Direct Appeal**

On September 25, 2000, Adams, through counsel, filed a Notice of Appeal with the Court of Appeals for the Seventh Appellate District ("state appellate court").  (Doc. No. 6, Exh. 5.)

On March 7, 2002, after warning Adams several months earlier that he had failed to prosecute his appeal, the state appellate court, *sua sponte*, entered an order of dismissal.  (Doc. No. 6, Exhs. 6 & 7.)

**C.    Application to Reopen Appeal**

On March 23, 2005, Adams, through the Office of the Public Defender, filed a delayed application for reopening the appeal pursuant to Ohio App. R. 26(B). (Doc. No. 6, Exh. 8.)  On April 22, 2005, the state appellate court granted Adams's application and reinstated his appeal. (Doc. No. 6, Exh. 9.)  On July 11, 2005, Adams filed his brief raising the following assignments of error:

I.    The trial court erred when it allowed Derrick Willis to testify when his name had not been provided to Mr. Adams during discovery and the unfair prejudice caused by allowing his testimony substantially outweighed its probative value.  (Tr. 287-304.)

II.    In violation of due process, the guilty verdicts were entered against the manifest weight of the evidence.  (Tr. 681-82; August 23, 2000 Journal Entry.)

III.    The trial court erred by imposing separate, consecutive sentences for two firearm specifications when both specifications arose from the same act or transaction.  (Tr. 710; Sent. Entry.)

IV.    The trial court erred by sentencing Mr. Adams to maximum, consecutive prison terms based on facts not found by the jury or admitted by Mr. Adams. (Tr. 707; Sent. Entry.)

(Doc. No. 6, Exh. 10.)

On March 31, 2006, the state appellate court affirmed Adams's convictions but remanded the matter for resentencing pursuant to *State v. Foster*, 845 N.E.2d 470, 109 Ohio St.3d 1, 2006-Ohio-856 (Ohio 2006).[1]  (Doc. No. 6, Exh. 13.)

On April 26, 2006, the State of Ohio filed an appeal with the Supreme Court of Ohio. (Doc. No. 6, Exh. 14.)  On August 2, 2006, the State's appeal was dismissed as not involving any substantial constitutional question.  (Doc. No. 6, Exh. 17.)

**D.    Resentencing**

On October 20, 2006, the trial court resentenced Adams to an aggregate sentence of twenty-three years incarceration – three years less than his original sentence due to the merger of the two firearm specifications.  (Doc. No. 6, Exh. 19.)

On November 22, 2006, Adams, through counsel, appealed his new sentence.  (Doc. No. 6, Exhs. 20 & 21.)  The state appellate court affirmed.  (Doc. No. 6, Exh. 23.)

On November 1, 2007, Adams, through counsel, filed an appeal with the Supreme Court of Ohio.  (Doc. No. 6, Exhs. 24 & 25.)  On February 25, 2008, the appeal was dismissed as not involving any substantial constitutional question.  (Doc. No. 6, Exh. 27.)

**E.    Federal Habeas Petition**

On January 21, 2009, Adams filed a Petition for Writ of Habeas Corpus and asserted the following ground for relief:

> GROUND ONE: Petitioner was denied due process of law, his right to trial by jury; and sentenced in violation of the *ex post facto* clause [of] the United States

---

[1]  The state appellate court also found that it was error for the trial court to impose two separate prison terms for the gun specifications.  (Doc. No. 6, Exh. 13.)

-4-

Constitution when the state trial court retroactively imposed a non-minimum, consecutive prison term under *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856.

(Doc. No. 1.)

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

-5-

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One: Retroactive Application of Foster and the *Ex Post Facto* Clause**

Adams alleges that he was denied due process of law, his right to trial by jury, and that his sentence violated the *Ex Post Facto* clause of the United States Constitution when the trial court, upon remand, "retroactively imposed a non-minimum, consecutive prison term" pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856.

On February 27, 2006, the Ohio Supreme Court decided  *Foster* which struck down O.R.C. § 2929.14(B), among other sections, as unconstitutional under *Blakely* because it required a court to make findings, not determined by a jury beyond a reasonable doubt before the imposition of a non-minimum sentence on an offender who had never been to prison.  *Foster*, 109 Ohio St.3d at 26.  The Ohio Supreme Court, applying a remedy similar to that adopted in *Booker*, severed O.R.C. § 2929.14(B) thereby allowing trial courts full discretion to impose a prison sentence

-6-

within the statutory range without making findings or giving reasons for exceeding the minimum

sentence.  *Id.* at 30.  The *Foster* Court held that its ruling must be applied to all cases still on

direct review or not yet final.  *Id.* at 31.

Adams argues that the Ohio Supreme Court's severance remedy in *Foster* violated the *ex

post facto* and due process clauses of the United States Constitution.  (Doc. No. 7.)  The state

appellate court rejected this argument, finding as follows:

> We recently released an opinion addressing an identical due process and ex post
> facto argument.  In *State v. Palmer*, 7th Dist. No. 06 JE 20, 2007 Ohio 1572, we
> specifically concluded that resentencing under *Foster* "does not violate
> appellant's due process rights or the *ex post facto* clause."  *Id.* at P 76.  We noted
> many reasons for this conclusion, including the fact that the Ohio Supreme Court
> mandated this result and that *Foster* affects the punishment imposed on an
> offender, not the crime he committed.  *Id.* at P 61-73.  Adams is now making the
> same arguments we rejected in *Palmer*.  We see no reason to revisit the issues we
> decided in that case.

*Adams*, 2007-Ohio-5352 at ¶8.

The United States Constitution states, in pertinent part, that "No Bill of Attainder or ex post

facto Law shall be passed."  The United States Supreme Court has explained that the *ex post

facto* clause "is a limitation upon the powers of the Legislature, and does not of its own force

apply to the Judicial Branch of government."  *Marks v. United States*, 430 U.S. 188 (1977)

(internal citations omitted).  In *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001), the Supreme

Court held that the due process clause does not incorporate or extend *all* the restrictions imposed

upon state legislatures by the *ex post facto* clause into the province of state judicial decisions.

*See Garrett v. Warden*, 2009 U.S. Dist. LEXIS 42826 (S.D. Ohio May 19, 2009).  However,

some limitations stemming from the *ex post facto* clause are also inherent in the notion of due

process.  *See Marks*, 430 U.S. at 191-92 ("[T]he principle on which the [*Ex Post Facto*] Clause is

based - the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties - is fundamental to our concept of constitutional liberty.")  In *Bouie v. City of Columbia*, 378 U.S. 347 (1964), the Supreme Court found that a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct that had not been criminal prior to the court's new construction.  Consequently, *post hoc* criminalization of a previously innocent act failed to give defendants fair warning of the punitive consequences of their behavior.[2]  The *Rogers* Court rested its rationale on "core concepts of notice, foreseeability, and in, particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct."  532 U.S. at 459.

Neither the United States Supreme Court nor the Sixth Circuit has addressed the issue of whether the *Foster* decision is tantamount to an *ex post facto* law.  However, the Sixth Circuit has repeatedly held that the retroactive application of a similar remedial sentencing ruling in *Booker* did not raise an *ex post facto* issue.  *See United States v. Hill*, 209 Fed. Appx. 467, 468 (6th Cir. 2006); *United States v. Barton*, 455 F.3d 649, 657 (6th Cir. 2006); *United States v. Shepherd*, 453 F.3d 702, 705-06 (6th Cir. 2006); *U.S. v. Sexton,* 512 F.3d 326, 331 (6th Cir. 2008). In *Barton*, the Sixth Circuit addressed the *ex post facto* argument and concluded that because *Blakely* had been decided prior to the defendant's conviction, it "would not have been a leap in logic to expect the Supreme Court to apply *Blakely*" to the federal sentencing guidelines in some

---

[2] Though the *Bouie* Court held that a defendant may only be punished for acts that were criminal at the time the defendant performed them, the Supreme Court has also held that unconstitutional statutes may, nevertheless, give a defendant fair warning of the penalties that a state may seek to impose on a defendant.  *See Dobbert v. Florida*, 432 U.S. 282 (1977); *accord United States v. Duncan*, 400 F.3d 1297, 1307-08 (11th Cir. 2006).

-8-

manner.  *Id*. at 653-54.

The Ohio Supreme Court also recently addressed identical *ex post facto* and due process arguments.  *See State v. Elmore*, 2009-Ohio-3478, 2009 Ohio LEXIS 1954 (Ohio 2009).  It held that neither the *ex post facto* nor due process clauses were violated, because *Foster* did not judicially increase the range of his potential sentence, nor did it retroactively apply a new statutory maximum.  *Id* at ¶¶12-30.  The *Elmore* Court concluded that the defendant had notice of the sentencing range, which was unchanged from the time he committed the crimes to when he was resentenced.  *Id.*

While the Ohio Supreme Court's interpretation of federal law is not binding on this Court, the *Elmore* decision is persuasive.  Moreover, other federal courts sitting in Ohio also have rejected *ex post facto* challenges to the retroactive application of judicial reconstruction of a statute.  *See, e.g., Keith v. Voorhies,* 1:06CV2360, 2009 U.S. Dist. LEXIS 4726, at * 34, (N.D. Ohio Jan. 23, 2009)( Lioi, J.); *Watkins v. Williams*, 2008 U.S. Dist. LEXIS 47557 (N.D. Ohio Jun. 17, 2008) (Adams, J.); *Lyles v. Jeffreys*, 2008 U.S. Dist. LEXIS 33822 (N.D. Ohio Apr. 24, 2008) (Oliver, J.); *Smith v. Moore,* 2008 WL 3890009, Case No. 3:07CV1121, (N.D. Ohio Aug. 19, 2008) (Adams, J.); *Hooks v. Sheets*, 2008 U.S. Dist. LEXIS 77612 (S.D. Ohio Oct. 3, 2008) (Beckwith, J.).  As noted in *Rettig v. Jefferys*, 2007 U.S. Dist. LEXIS 97648, 24-25 (N.D. Ohio Dec. 17, 2007):

> Ohio courts have uniformly rejected *ex post facto* challenges to the *Foster* decision. *See, e.g., State v. Swann*, 171 Ohio App.3d 304, 314, 2007 Ohio 2010, 870 N.E.2d 754, 762 (Ohio Ct. App. 2007); *State v. Sharp*, 2007 Ohio 6324, 2007 WL 4200755, at *2 (Ohio Ct. App. 2007); *State v. McGhee*, 2006 Ohio 5162, 2006 WL 2796275, at *7 (Ohio Ct. App. 2006). *See generally United States v. Barton*, 455 F.3d 649, 657 (6th Cir.), *cert. denied*, 127 S. Ct. 748, 166 L. Ed. 2d 579 (2006) (*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), does not violate *ex post facto*).  The court in

> *McGhee* found no *ex post facto* violation because the defendant "knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because [he] was unlikely to amend his criminal behavior in light of a sentencing change." *McGhee*, 2006 Ohio 5162, 2006 WL 2796275, at *7. In *Sharp*, the court noted that "the sentencing range was the same at the time [the defendant] committed the offenses as when he was sentenced," and *Foster* "did not judicially increase the range of his sentence." *Sharp*, 2007 Ohio 6324, 2007 WL 4200755, at *2.

In *Hooks*, the Southern District Court also explained that the *ex post facto* clause limits legislative powers and *not* judicial decisions – a finding echoed by the state appellate court. 2008 U.S. Dist. LEXIS 77612 at *8 (*citing Rogers v. Tennessee*, 532 U.S. 451, 456 (2001)). The *Hooks* decision acknowledged that "retroactive judicial decision-making must comport with core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id*. (citations omitted). Nevertheless, the court found that neither *Blakely* nor *Foster* altered the range of potential penalties faced by a criminal defendant in Ohio. *Id*. In *Lyles*, the Court noted that, although Ohio's sentencing statutes may have been unconstitutional at the time the defendant was sentenced, Ohio law "gave [petitioner] fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts." 2008 U.S. Dist. LEXIS 33822 at *4.

This Court, therefore, is drawn to the conclusion that, in spite of *Foster*, Ohio statutes gave Adams fair notice that: (1) the acts he engaged in were prohibited; and, (2) the degree of punishment which the legislature wished to impose on those who committed such acts. As *Foster* did not judicially create the possibility of consecutive sentences where none had existed before, Adams cannot credibly argue that he lacked fair warning of the potential penalties

-10-

applicable to the prohibited conduct.  *See United States v. Alson-Graves*, 435 F.3d 331, 343

(D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2ⁿᵈ Cir. 2005); *United States v. Lata*, 415 F.3d 107, 112 (1ˢᵗ Cir. 2005).  Therefore, the state appellate court did not

unreasonably apply clearly established federal law.  No *ex post facto* or due process violations

occurred.

Adams also asserts a due process violation alleging that *Foster* raised the presumptive

sentence for first time offenders to the statutory maximum.  This is simply inaccurate.  Prior to

Foster, O.R.C. § 2929.14(B) provided a presumption that an offender who had never served a

prison term should receive the minimum sentence unless imposing such a sentence would

demean the seriousness of the offense.  This provision was completely severed by *Foster*.

Consequently, no presumption in favor of any sentence within a statutory range, whether the

minimum or the maximum, remains.

Adams next argues that eliminating the presumption in favor of the minimum sentence for

those never having served a prison term raised the statutory maximum he was facing prior to the

*Foster* decision.  Thus, he maintains, *Foster* retroactively eliminated a benefit to him in that,

absent a jury finding which was never made, he could not have been constitutionally sentenced

to more than the minimum prison term prior to *Foster*.   It is argued, therefore, that the required

findings were more than sentencing enhancements.  Indeed, they were the equivalent of elements

of the offense at the time Adams committed them and, as such, they could not be retroactively

eliminated by the *Foster* Court.  *See Washington v. Recuenco*, 126 S.Ct. 2546, 2552 (2006); *see

also Sattazahn v. Pennsylvania*, 537 U.S. 101, 111 (2003).  Adams argues that "the unilateral

elimination of the controlling statutory maximum by Foster cannot be reconciled with the jury

trial guarantee of the Sixth and Fourteenth Amendments." (Doc. No. 7 at 8.)

The first issue is whether the factors in O.R.C. § 2929.14(B) should be treated as elements. Although there is some case law that does indeed equate sentencing factors and elements in that both require the state to be put to its proof beyond a reasonable doubt, it does not follow that the Sixth Amendment right to a jury trial prohibits the Supreme Court of Ohio from severing a sentencing factor or enhancement when fashioning a remedy where statutory provisions are found constitutionally defective.  This conclusion is dictated by *Calder v. Bull*, 3 U.S. 386, 390 (1798), *Carmell v. Texas*, 529 U.S. 513 (2000), and especially *Rogers v. Tennessee*, 532 U.S. 451 (2001).

The *Rogers* Court held that "the Due Process Clause does not incorporate as to state judicial decisionmaking all the restrictions imposed on state legislatures by the *[E]x [P]ost [F]acto* clause."  *Garrett v. Warden, Ohio Reformatory for Women*, 2009 WL 1416047, Case No. 3:09cv058, * 3 (S.D. Ohio May 19, 2009).  In *Rogers*, the Tennessee Supreme Court abolished the common-law rule that the death of a victim within a year and a day after being assaulted is a prerequisite to a homicide prosecution.  The Court then applied the abolition to uphold the murder conviction under consideration where death occurred fifteen months after the assault.  The United States Supreme Court also upheld the conviction, holding that the retroactive abolition of the year-and-a-day rule did not violate Rogers' due process rights. Furthermore, the  *Rogers* Court noted that a judicial extension of the *Ex Post Facto* Clause "would circumvent the . . . [c]lause's clear text, which expressly applies only to legislatures; would evince too little regard for the important institutional and contextual differences between legislating and common law decisionmaking; would be incompatible with the resolution of

-12-

uncertainty that marks any evolving legal system; and would unduly impair the incremental and reasoned development of precedent that is the foundation of the common law system." *Rogers,* 532 U.S. at 452.  *Rogers* clearly involves due process considerations and was not decided under the Sixth Amendment right to a trial by jury.[3]

Adams also argues that the remedy adopted by the Supreme Court in *Foster* is distinguishable from that adopted by the United States Supreme Court in *Booker*.  (Doc. No. 16 at 27-29.)  He asserts that *Foster* effectively eliminated the ability of an appellate court to review a sentence and thereby violated his right to due process.

There has never been a federal constitutional right to an appeal.  *Abney v. United States*, 431 U.S. 651 (1977); *Martinez v. Court of Appeal*, 528 U.S. 152, 160 (2000); *accord Hollin v. Sowders*, 710 F.2d 264, 267 (6th Cir. 1983); *Horton v. Bomar*, 335 F.2d 583, 584 (6th Cir. 1964).  Even more to the point, a defendant does not have the right to appeal the length of his sentence.  *See United States v. Nation*, 352 F.3d 1075, 1076-1077 (6th Cir. 2003) ("[A Defendant] has no constitutional right to appeal his sentence." ); *accord United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005) ("There is no constitutional right to appeal a criminal sentence.") (*citing Jones v. Barnes*, 463 U.S. 745 (1983)).  However, "if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (*quoting Griffin v. Illinois*, 351 U.S. 12, 18 (1956)).

---

[3]  Moreover, *Rogers* is also distinguishable from the instant case as the abolishment of the year-and-a-day rule more closely resembles an element of a crime than does a sentencing enhancement.

-13-

Ohio, by statute, confers upon defendants limited appellate rights with respect to their

sentences.  *See* O.R.C. § 2953.08.  As explained in its opinion, the *Foster* court excised certain

statutory provisions that required impermissible judicial fact-finding as follows:

> The following sections, because they either create presumptive minimum or
> concurrent terms or require judicial fact-finding to overcome the presumption,
> have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B),
> 2929.19(B)(2), and 2929.41. These sections are severed and excised in their
> entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum
> prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive
> terms. R.C. 2953.08(G), which refers to review of statutory findings for
> consecutive sentences in the appellate record, no longer applies. We also excise
> R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent
> offenders and major drug offenders.

> ... Excising the unconstitutional provisions does not detract from the overriding
> objectives of the General Assembly, including the goals of protecting the public
> and punishing the offender. *See* R.C. 2929.11(A). The excised portions remove
> only the presumptive and judicial findings that relate to "upward departures," that
> is, the findings necessary to increase the potential prison penalty. We add no
> language, and the vast majority of S.B. 2, which is capable of being read and of
> standing alone, is left in place.

> We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of
> being severed. After the severance, judicial fact-finding is not required before a
> prison term may be imposed within the basic ranges of R.C. 2929.14(A) based
> upon a jury verdict or admission of the defendant. We further hold that R.C.
> 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance,
> judicial fact-finding is not required before imposition of consecutive prison terms.
> Finally, we hold that R.C. 2929.14(D)(2)(b) and (3)(b) are capable of being
> severed. After the severance, judicial fact-finding is not required before
> imposition of additional penalties for repeat-violent-offender and
> major-drug-offender specifications.  The appellate statute R.C. 2953.08(G),
> insofar as it refers to the severed sections, no longer applies.

> Accordingly, we have concluded that trial courts have full discretion to impose a
> prison sentence within the statutory range and are no longer required to make
> findings or give their reasons for imposing maximum, consecutive, or more than
> the minimum sentences.

*Foster*, 845 N.E.2d at 497-98.

*Foster* held that the appellate statute, O.R.C. § 2953.08, in so far as it refers to the other severed sections, no longer applies.  However, it did not sever all appeal rights.[4]  It also left in tact the statutory provisions setting forth the purposes of sentencing and the provisions dealing with seriousness and recidivism factors – O.R.C. §§ 2929.11 and 2929.12.  The provisions are not dissimilar to those found in the federal sentencing guidelines.  These statutes guide judges in the "overriding purposes of felony sentencing, which are 'to protect the public from future crime by the offender and others and to punish the offender,'" and yet give trial courts discretion "to determine the most effective way to comply with the purposes and principles of sentencing." *Foster*, 845 N.E.2d at 484 (*quoting* O.R.C. §§ 2929.11(A) & O.R.C. § 2929.12(A)); *see also State v. Kalish*, 120 Ohio St. 3d 23, 26, 896 N.E.2d 124, 128-29 (Ohio 2008).  For example, trial courts generally discuss the seriousness of the offense and the  likelihood of recidivism at the sentencing hearing.  *See Almendarez-Torres v. United States*, 523 U.S. 224, 243,(1998) ("recidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence").[5]

---

[4]  In *State v. Mathis*, 109 Ohio St.3d 54, 59, 846 N.E.2d 1 (2006), the Ohio Supreme Court stated:

> Unaffected by *Foster* were the state's appeals as a matter of right for a sentence where no prison term was imposed despite the presumption favoring prison for certain offenses, or for judicial modification of a sentence for a first- or second-degree felony under R.C. 2929.20. [R.C. 2953.08(B)(1) and (3)].  Nor was the defendant's or the state's appeal as of right affected when the sentence "is contrary to law." [R.C. 2953.08(A)(4) and (B)(2)].

[5]  A judge can consider, among other things, such factors as "whether the physical or mental injury was worsened 'because of the physical or mental condition or age of the victim;' whether the offense caused serious physical, psychological, or economic harm to

-15-

Though Ohio courts never disputed criminal defendants had a right to appeal their sentence after *Foster*, it was unclear what standard of review should apply.  Prior to *Foster*, it was undisputed that an appellate court was to "review the records, including the findings underlying the sentence or modification" and had the power to "take any action ... if it clearly and convincingly finds" either that the record fails to support the sentencing court's findings or the sentence is otherwise contrary to law.  *Kalish*, 896 N.E.2d at 127 (*citing* O.R.C. § 2953.08(G)(2)).  In fact, the former statute expressly stated that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."  O.R.C. § 2953.08(G)(2). After *Foster* excised the requirement for the sentencing court to make judicial factfindings, it was unclear if sentences were to continue to be reviewed under a clear and convincing standard or under the old abuse-of-discretion standard.  In *Kalish*, the Ohio Supreme Court chose the latter and held that appellate courts must apply a two-step approach in reviewing felony sentences.  "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.  If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard."  896 N.E.2d at 126.  The *Kalish* court explains that O.R.C. §§ 2929.11 and 2929.12 are not factfinding statutes, but instead set out guides for a trial court to use in fashioning an appropriate sentence.  *Id*. at 128.  Therefore, sentences, including those made consecutive, are subject to appellate review for abuse-of-discretion.  *Id*.

While *Kalish* dictated the standard in Ohio courts for reviewing felony sentences, this

---

the victim; whether the defendant held a public office or position of trust in the community, and the offense related to that office or position."  *Foster*, 845 N.E.2d at 485.

Court's sole concern in the instant matter is whether clearly established federal law, as set out in United States Supreme Court precedent, was violated.  Adams argues that the severance remedy crafted in *Foster* is not analogous to the remedy crafted in *Booker*.  The Court concedes that the remedies are not identical.  The *Booker* court left in place sentencing guidelines, but found that the application of the guidelines was not mandatory.  *Foster*, on the other hand, eliminated findings previously applicable to consecutive and some greater than the minimum terms, while maintaining a relatively narrow range of sentences for the five levels or degrees of felonies. Adams avers that *Booker* maintained a reasonableness standard of review concerning the appropriateness of a given sentence while *Foster* did not.  Ohio, as stated above, currently allows review on an abuse-of-discretion standard.  The *Booker* decision, however, did not set a threshold or minimum standard determinative of whether a state's appellate process comports with due process and equal protection.  Adams has not identified any clearly established federal law that renders abuse-of discretion sentencing appeal procedures, such as those adopted in Ohio, unconstitutional.[6]  As such, any differences between the two standards of appellate review are not of a constitutional magnitude.

Finally, though Adams does not cite the United States Supreme decision in *Oregon v. Ice*, 129 S.Ct. 711, 172 L. Ed. 2d 517 (2009), it is clear that *Blakely* and the Sixth Amendment are simply inapplicable to consecutive sentences.  The *Ice* court explained that historically juries played "no role in the decision to impose sentences consecutively or concurrently [but] [r]ather, the choice rested exclusively with the judge."  129 S. Ct. at 717.  Therefore, when imposing a

---

[6]  Though the *Kalish* decision was not rendered until after Adams's final sentencing appeal, it is immaterial as Adams has failed to identify any clearly established federal law that invalidates either of the appellate review approaches considered by Ohio courts.

consecutive sentence, neither judicial fact-finding nor the lack of such findings, violate clearly

established federal law.  As such, any argument that *Blakely* precluded the imposition of

consecutive sentences where judicial findings of fact were made is unavailing.

### IV.  Conclusion

For the foregoing reasons, it is recommended that Adams's Petition be DENIED.

s/ Greg White_____
U.S. MAGISTRATE JUDGE


Date: November 23, 2009



### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-18-